# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2023

Lyle W. Cayce
Clerk

No. 22-11132

Securities and Exchange Commission,

*Plaintiff—Appellee*,

*versus*

Timothy Barton,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

Before Clement, Graves, and Higginson, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

The Securities and Exchange Commission ("SEC") sued Defendant Timothy Barton as well as other individual Defendants and corporate entities for securities violations. Barton appeals the district court's order appointing a receiver over all corporations and entities controlled by him. For the following reasons, we VACATE the order appointing the receiver effective 90 days after the issuance of this court's mandate and REMAND for further proceedings. We also GRANT in part Barton's motion for a partial stay pending appeal.

# I. Background

## a. Factual Background

The SEC alleges the following facts in its complaint. Beginning around 2015, Defendant Haoqiang Fu, a Chinese national, began brokering homes for Defendant Stephen Wall, a Texas-based home builder. After deciding to expand into real estate development projects, they partnered with Barton, a Texas-based real estate developer. Their plan was to offer and sell investment loans to Chinese investors. To effectuate this plan, Barton formed single-purpose entities (the "Wall Entities") to receive and control investor funds, purchase specific parcels of land, and later develop the land into residential housing. After Wall identified the land for projects, Fu marketed the investments to Chinese investors. For each investment contract, the Wall Entity would borrow a fixed amount from investors and use it in conjunction with other investors' funds and money in hand to acquire a specific parcel of land at a specified price. In return, the investors were promised repayment of the principal after two years and interest payments after the first and second year. Between 2017 and 2019, the Wall Entities raised approximately $26.3 million dollars from over 100 investors. However, only two of the nine Wall entities purchased the property described in their respective investment contracts for a total of $2.6 million. Even these purchases were not made using the investor funds earmarked for those properties—instead, the purchases were made using commingled funds from other offerings. In addition, two other entities controlled by Barton (the Relief Defendants) purchased the properties that two Wall entities were supposed to purchase. In all, approximately $23.7 million of the investors' funds were commingled and misused to: 1) pay Barton's personal expenses, 2) pay Fu commissions and fees, 3) make Ponzi payments to the earlier investors, 4) make political contributions, 5) acquire unrelated

properties, 6) pay professional fees for unrelated properties, and 7) make payments to Wall.

**b. Procedural Background**

On September 23, 2022, the SEC sued Barton, Wall, Fu, the Wall Entities, Carnegie Development (the managing member of the Wall entities), and the Relief Defendants for securities violations. The SEC sought a permanent injunction, disgorgement of ill-gotten gains, and civil penalties.

Soon after filing its complaint, the SEC moved to appoint a receiver over the Wall Entities, Carnegie Development, the Relief Defendants, and any other entities that Barton directly or indirectly controls. It supported its motion with a declaration from an SEC Staff Accountant who was involved in the investigation. The declaration details the transfer, commingling, and misuse of the investors' funds. In its motion, the SEC argued that the district court may appoint a receiver on a prima facie showing of fraud and mismanagement based on this court's decision in *SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981) ("*First Financial*"). Barton opposed the motion, arguing that the district court must instead find that a receivership is appropriate under the factors in *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012).

On October 18, 2022, the district court granted the SEC's motion and appointed a receiver over assets belonging to the Defendant entities, the Relief Defendants, and any other entities directly or indirectly controlled by Barton. It made the following findings in its order:

> the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities
>
> . . .

> the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

The order gave the receiver numerous powers, including the power to determine the nature of the property interests, take possession of any property belonging to receivership entities, and take any actions necessary to preserve receivership property or prevent its dissipation, concealment, or inequitable distribution.

Barton moved to strike the clause allowing the receiver to take possession of assets belonging to "any other entities that Defendant Timothy Barton directly or indirectly controls." The district court denied his motion. On November 1, 2022, the receiver moved for the district court to supplement its receivership order to include over a hundred newly discovered Barton-controlled entities by name. The district court supplemented its order *nunc pro tunc* to expressly identify 126 newly discovered receivership entities. The receiver then moved for the court to set procedures for the disposition of personal property in the custody of receivership entities. The district court granted the motion and adopted the procedures proposed by the receiver. Barton timely appealed the order appointing the receiver and both follow-up orders. On November 28, 2022, he moved in the district court for a stay pending appeal of the receivership order. While that motion was still pending, he also asked this court for a stay pending appeal. A motions panel of this court denied his request on January 6, 2023, and the district court denied his request on January 17, 2023.

## II. Jurisdiction & Standard of Review

We have jurisdiction over interlocutory appeals from "orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. § 1292(a)(2). We review a district court's decision to appoint a receiver for abuse of discretion. *Netsphere*, 703 F.3d at 305.

## III. Discussion

### a. The Applicable Test

A central dispute between the parties is what test the district court should have applied before imposing a receivership. Barton argues the district court abused its discretion because it did not apply the standard or make the proper findings under the factors set forth in *Netsphere* ("*Netsphere* factors"). The SEC responds that *Netsphere* is inapplicable and the district court's findings were sufficient under *First Financial*.

In *First Financial*, the SEC sued a securities dealer and its officers for securities violations. 645 F.2d at 431. The district court granted the SEC's motion for a preliminary injunction and enjoined each individual defendant "from offering, purchasing, or selling packages of the specified securities in violation of the federal securities laws, and from disposing of assets and records of First Financial." *Id.* at 432. It also enjoined the defendants from disposing of more than $1,500 in personal assets per week. *Id.* Twelve days later, it granted the SEC's motion for a temporary receiver over the defendant entity, First Financial. *Id.* The order directed the receiver "to take exclusive control of the corporate assets in order to prevent injury to First Financial investors and to prevent further violations of the federal securities laws." *Id.* at 437-38. Reviewing the injunction order, this court first explained that under the relevant securities laws, preliminary injunctive relief is

appropriate upon a showing of "a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws." *Id.* at 434. It concluded that the district court did not abuse its discretion in entering a preliminary injunction. *Id.* at 436. Turning to the district court's appointment of a receiver, it cited a Seventh Circuit case for the following proposition:

> The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of (the corporate defendant's) affairs for the benefit of those shown to have been defrauded. In such cases the appointment of a trustee-receiver becomes a necessary implementation of injunctive relief.

*Id.* at 438 (quoting *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)). To protect the public welfare and the interests of those who invested with First Financial, this court concluded that the "appointment of a receiver was a necessary relief measure within the discretion of the court, as an ancillary to preliminary injunctive relief during the continuing civil enforcement proceeding." *Id.* at 439.

The SEC relied upon *First Financial* in both its briefing before the district court and this court, but there is a crucial distinction between that case and the receivership order here. There, the SEC already obtained injunctive relief, so the receivership was "proper as an adjunct to injunctive relief for a securities fraud." *Netsphere*, 703 F.3d at 306 (citing *Keller*, 323 F.2d at 402); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees.") (citation omitted). Here, the SEC did not obtain a preliminary injunction before seeking a receivership, so *First Financial* is inapposite.

That brings us back to *Netsphere*. In that case, a defendant was involved in disputes over the ownership of domain names. *Netsphere*, 703 F.3d at 302. After settling those domain name disputes in related bankruptcy proceedings, the bankruptcy court recommended the appointment of a special master to mediate unpaid legal fees since the defendant kept hiring and firing lawyers without paying them. *Id.* at 303. The district court appointed a special master, but the defendant went on to fire another attorney. *Id.* at 304. The bankruptcy trustee then filed an emergency motion to appoint a receiver, which the district court granted. *Id.*

Before discussing the propriety of the receivership, this court began by noting that a "[r]eceivership is 'an extraordinary remedy that should be employed with the utmost caution' and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Id.* at 305 (citing 12 C. Wright & A. Miller, Federal Practice and Procedure § 2983 (3d ed. 2012)). It catalogued the various contexts where receiverships are used, including "cases of non-compliance with SEC regulations, [where] a receiver may be appointed to prevent the corporation from dissipating corporate assets and to pay defrauded investors." *Id.* at 306. Turning to the facts of the case at hand, it found that none of the purported justifications supported the imposition of a receivership. *Id.* at 307-11.

Since the SEC had not already obtained an injunction against Barton when the SEC moved for a receivership, *First Financial* does not control and instead, the *Netsphere* factors must be met for a receivership to be justified: 1) a clear necessity to protect the defrauded investors' interest in property, 2) legal and less drastic equitable remedies are inadequate, and 3) the benefits of receivership outweigh the burdens on the affected parties. *See id.* at 305.

### b. The Propriety of the Receivership

Having concluded that *Netsphere* applies, we consider whether the district court abused its discretion. In its order, the district court justified appointing a receiver by stating it "is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities" and would be "in the public interest by preserving illicit proceeds of fraudulent conduct, [and] penalizing past unlawful conduct and deterring future wrongdoing." Even assuming that these findings could satisfy the first *Netsphere* factor, the order does not address whether legal and less drastic equitable remedies are inadequate or whether the benefits of the receivership outweigh the burdens on the affected parties. *Netsphere*, 703 F.3d at 305.

For the latter two factors, the SEC asks us to consider the district court's reasoning in its order denying Barton's motion for a stay that was filed after this appeal was lodged. In its brief, it provided no authority for the proposition that we can look to a subsequent order denying a separate motion when reviewing an earlier order. However, at oral argument, SEC's counsel claimed we can do so under the exception for actions in aid of an appeal in *Silverthorne v. Laird*, 460 F.2d 1175, 1178 (5th Cir. 1972). "This circuit follows the general rule that the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as the judgment has not been stayed or superseded." *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983). In *Silverthorne*, the district court denied habeas relief, and the petitioner appealed. 460 F.2d at 1178. During the pendency of the appeal, the district court issued a written opinion "in which he thoroughly discussed the rationale in support of his earlier order denying habeas corpus relief." *Id.* This court found that the written opinion's amplified views aided the appeal, so it fell under that exception. *Id.* at 1178-79. Unlike *Silverthorne*,

the order the SEC asks us to consider is not a fuller explanation of the earlier order granting a receivership—it is a denial of a separate motion. Further, as Barton points out, the district court's order denying the stay discussed events and actions that took place *after* the receivership was already in place. "'Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 n.4 (5th Cir. 2008) (en banc) (quoting *Gurmankin v. Costanzo*, 626 F.2d 1115, 1119–20 (3d Cir. 1980)). The reasoning in the subsequent order goes beyond the basis on which the district court originally acted, and *Silverthorne* does not give us license to consider it.

Constraining our review to the district court's limited reasoning in its original order, we cannot say whether it abused its discretion. *See Gonzalez v. Assocs. Health & Welfare Plan*, 55 F. App'x 717 (5th Cir. 2002) ("Although we cannot say the court abused its discretion by denying prejudgment interest, the district court's failure to explain its reasoning frustrates meaningful appellate review."). Accordingly, we will vacate the appointment of the receiver and remand so that the district court may consider whether to appoint a new receivership under the *Netsphere* factors. When faced with a similar situation, the Third Circuit opted to delay vacatur of the receivership instead of vacating it immediately. *See KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 123 (3d Cir. 2019). We find the Third Circuit's approach prudent here given the breadth of the receivership and the possibility that a new receivership would cover some of the same entities. Thus, we will vacate the current receivership order effective 90 days from the issuance of this court's mandate.

### c. The Receivership's Jurisdiction

Barton next argues that the district court erred by placing multiple entities he controls in the receivership without any showing that they

received or benefitted from ill-gotten investor funds. The SEC responds that the district court acted within its discretion by including all Barton-controlled entities in the receivership. Because it alleges that Barton has engaged in extensive commingling of funds, it claims that Barton's control is an effective proxy for placing an entity in the receivership even if it had not yet traced the funds to that entity.

In *Netsphere*, this court rejected the district court's determination that a receivership was necessary for the defendant to pay his debts to former attorneys because "the jurisdictional principle that a court's equitable powers do not extend to property unrelated to the underlying litigation applies with equal force to receiverships. A court lacks jurisdiction to impose a receivership over property that is not the subject of an underlying claim or controversy." 703 F.3d at 310. In support, it cited *Cochrane v. W.F. Potts Son & Co.* where this court held that a receivership was proper only over the series of bonds subject to litigation, not the other series of bonds that were not subject to the complaint and over which the bondholder did not claim an interest. *Id.* (citing *Cochrane v. W.F. Potts Son & Co.*, 47 F.2d 1026, 1027-29 (5th Cir. 1931)). Accordingly, *Netsphere* held that the district court could not impose a receivership over the plaintiff's personal property or assets owned by certain entities because those assets were not sought in or the subject of the underlying litigation. *Id.*

The SEC relies on *FDIC v. Faulkner* to support the district court's inclusion of all Barton-controlled entities in the receivership regardless of whether they received or benefitted from ill-gotten funds. 991 F.2d 262, 267-68 (5th Cir. 1993). In *Faulkner*, the defendants allegedly engaged in fraudulent real estate speculation schemes. *Id.* at 264. The FDIC sought a preliminary injunction against the defendants to limit their ability to transfer assets, and the district court granted it. *Id.* On appeal, the defendants argued that the injunction was too broad since it froze assets that were not obtained

through alleged fraudulent activities. *Id.* at 267. Since the defendants refused to aid the district court in determining which of the assets were traceable to the alleged fraud, this court held that the district court "did not err in freezing all of the [defendant's] assets, pending a determination through limited discovery of which assets are traceable to [defendant's] alleged fraudulent activities." *Id.* at 268.

*Faulkner* does not support the district court's actions here. Under *Faulkner*, the SEC could have sought an injunction freezing asset transfers while it traced the funds and determined which entities should be placed in the receivership. But it did not. Since a receivership's jurisdiction extends only over property subject to the underlying claims, the district court abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefited from the ill-gotten funds. *Netsphere*, 703 F.3d at 310. Should the district court decide that a new receivership is justified on remand, it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**d. Stay Pending Appeal**

After oral argument, Barton moved for a partial stay of certain receivership activities pending appeal. He asked this court to: 1) order the receiver to retain possession of all corporations and corporate property pending a final decision on the merits, 2) suspend the receiver's power to sell or dispose of assets belonging to receivership entities until 60 days after a final opinion on the merits from this court, and 3) stay the receiver's ability to undertake receivership activities that go beyond caring for the seized assets pending a final decision on the merits. Barton also sought emergency relief from the transfer of one of the receivership entity's possessory interests in a

particular property. We denied his emergency request as moot but carried the remainder of his motion with the case.

At the outset, the SEC challenges whether Barton's motion complies with Federal Rule of Appellate Procedure 8. Under Rule 8, stay motions ordinarily must first be presented to the district court "unless it clearly appears that further arguments in support of the stay would be pointless in the district court." *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981). The district court denied Barton's initial motion for a stay pending appeal. When Barton sought to preliminarily enjoin the receiver's auction of contents of a particular receivership property, the district court denied his request explaining that "[Barton's motion] requests the same relief, and on the same grounds, that the Court has already denied multiple times, and the Fifth Circuit has already denied once: a stay of the Receiver's activities pending appeal or final judgment." Given the clear indication that the district court would have denied this motion, we find that Barton's motion satisfies Rule 8 because moving first in the district court would have been pointless. *Id.*

Barton's first and third requests are now moot since we have reached a final decision on the merits. However, his second request is not moot because it seeks relief that extends 60 days beyond the issuance of a final decision. For his second request, we consider four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted). In light of our vacatur of the receivership order, we conclude that Barton has made the proper showing under the factors and is entitled to a partial stay.

## IV. Conclusion

For the foregoing reasons, we VACATE the district court's order appointing a receiver effective 90 days from the issuance of this court's mandate and REMAND for further proceedings consistent with this opinion. We also GRANT in part Barton's motion for a partial stay pending appeal: the receiver's power to sell or dispose of property belonging to receivership entities is immediately suspended, and this suspension will remain in effect until the receivership order is vacated 90 days from the issuance of this court's mandate. This suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court. Should the district court enter a new receivership order before the present order is vacated, this partial stay has no bearing on any actions a receiver may take under the new order.