NO. 22-11132

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*vs.*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

# MOTION FOR STAY PENDING APPEAL

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**
   a. **Defendant-Appellant**: Timothy Barton
   b. **Plaintiff-Appellee**: Securities and Exchange Commission
   c. **Intervenor**: United States of America
   d. **Other Personal Defendants** (entity defendants included below)
      i. Haoqiang Fu *also known as* Michael Fu
      ii. Stephen T. Wall
2. **Attorneys**
   a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney, Ted Huffman, Michael Dingman; Holland & Knight LLP: Richard Roper
   b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Interested Party HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Parties Maximilien Barton, Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Chris Cooke

f. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jonathan Patton

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin; Chandler Law PC: Corinna Pia Chandler

h. **For Receiver**: Brown Fox PLLC: Charlene Cantrell Koonce

i. **For Intervenor**: Renee M. Hunter

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |

| | | |
|---|---|---|
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |

| | | |
|---|---|---|
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |

| | | |
|---|---|---|
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |

| | | |
|---|---|---|
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLV |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |

| | | |
|---|---|---|
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. HNGH Turtle Creek

iii. Maximilien Barton

iv. Gillespie Villas LLC

v. Venus59 LLC

vi. TRTX Properties LLC

vii. MXBA LLC

viii. Titan Investments LLC

ix. Palisades-TC, LLC

**c. Receiver**

i. Cort Thomas

*/s/ Michael J. Edney*
Counsel for Timothy Barton

# Table of Contents

Certificate of Interested Persons ..... i
Table of Contents ..... x
Table of Authorities ..... xi
I. Introduction ..... 2
II. Factual and Procedural Background ..... 6
III. Legal Standard ..... 9
IV. Argument ..... 10
A. The District Court Likely Erred in Turning Over All of Defendant's Property To A Receiver ..... 10
1. The district court applied the wrong legal standard when it appointed the Receiver ..... 11
2. The district court imposed the receivership to punish a criminal defendant before the Government has proved any wrongdoing ..... 16
3. The district court has erred in authorizing the sale of key property prior to any judgment of wrongdoing ..... 18
4. The district court erred by placing companies under receivership with no shown relationship to lender funds at issue in the SEC's claims ..... 20
B. The Appellant will suffer irreparable harm in the absence of a stay pending appeal ..... 22
C. The other parties face minimal, if any, injury from a stay, and the public interest favors a stay ..... 24
V. Conclusion ..... 26
Certificate of Filing and Service ..... 28
Certificate of Conference ..... 29
Certificate of Compliance ..... 30

# Table of Authorities

**Page(s)**

**Cases**

*Citibank, N.A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) .......... 10

*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021) .......... 24

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) .......... 19

*Index Newspapers LLC v. US Marshals Svc.*,
977 F.3d 817 (9th Cir. 2020) .......... 26

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) .......... 20

*Kimmis v. Atchley*,
No. 3:10-CV-1535-D, 2014 WL 6805478 (N.D. Tex. Dec. 3, 2014) .......... 13

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 26

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .......... 11, 12, 15, 20

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 10, 24

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) .......... 22

*Santibanez v. Wier McMahon & Co.*,
105 F.3d 234 (5th Cir. 1997) .......... 12

*In re Search Warrant Issued June 13*,
2019, 942 F.3d 159 (4th Cir. 2019) .......... 23

*SEC v. ABS Manager, LLC*,
No. 13CV319-GPC JMA, 2013 WL 1164413 (S.D. Cal. Mar. 20, 2013) ........ 15

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) ........ 19

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ........ 19

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018) ........ 20

*SEC v. First Fin. Grp. of Tex.*
645 F.2d 429 (5th Cir. 1981) ........ 11, 12, 19

*SEC v. Phillip A. Michael Sec., Inc.*,
No. 74 CIV. 2158, 1974 WL 416 (S.D.N.Y. June 26, 1974) ........ 17

*United States v. Barton*,
No. 3:22-cr-00352-K (N.D. Tex. Sep. 20, 2022) ........ 7

*United States v. Michelle's Lounge*,
126 F.3d 1006 (7th Cir. 1997) ........ 24

*Wages & White Lions Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ........ 23

**Statutes**

28 U.S.C. § 1292(a)(1) ........ 10

28 U.S.C. § 1292(b)(2) ........ 1

28 U.S.C. § 3103(b)(1)(B) ........ 14

**Other Authorities**

Fed. R. App. P. 8(a)(2)(A)(ii) ........ 2

Fed. R. App. P. 27(d)(2)(A) ........ 31

Fed. R. App. P. 32(a)(5) .......... 31

Fed. R. App. P. 32(a)(6) .......... 31

Fed. R. App. P. 32(f) .......... 31

Federal Rule of Appellate Procedure 8(a) .......... 1

U.S. Const. Amend. V .......... 3

11A Wright & Miller, Fed. Prac. & Proc. § 2946 (3d ed. 2022) .......... 13

Under Federal Rule of Appellate Procedure 8(a) and 28 U.S.C. § 1292(b)(2), Appellant Timothy Barton ("Barton") respectfully requests this Court to stay the district court's Order Appointing Receiver ("Receivership Order"), **ROA.594**, or, in the alternative, stay several components of that order and others that have become a part of it: **ROA.1178** and **ROA.1172**.

In accordance with Rule 8, Barton filed a Motion to Stay Pending Appeal with the district court on November 28, 2022. ECF No. 71. Time is of the essence with the requested stay because the district court in the meantime has authorized the Receiver to permanently sell key assets. ECF Nos. 104, 109. The district court has denied a stay pending appeal for one of those sales. As a result, the errors in the district court's receivership orders are ripening into irreparable harm. If Barton succeeds on the merits of his appeal, these sales will have been contrary to law, difficult to reverse, and impossible to seek monetary compensation for given the court order immunizing the Receiver. Thus, the district court's failure to act on Barton's motion for stay pending appeal prior to authorizing these sales of property constitutes "fail[ure] to afford the relief requested." Fed. R. App. P. 8(a)(2)(A)(ii). Pursuant to

Fifth Circuit Rule 27.4, Barton requests that the Court decide this motion as soon as practicable, after allowing the SEC to respond by January 4, and Barton to reply by January 9.

## I. Introduction

With no reasoning other than entering the SEC's boilerplate proposed order, the district court took nearly all of a citizen's property and gave it to a trial lawyer to try to manage. The district court engaged in this breathtaking deprivation of property rights before the SEC had produced documents or a live witness relevant to its claims, much less had participated in any adversarial proceeding where the Government had to prove Barton responsible for any wrongdoing. That receiver, two days later, kicked out Barton from his only home and seized his real estate development business that previously had survived every business cycle of the prior thirty years.

The district court's justification: Tim Barton is guilty of wrongdoing and, to quote the court's order, it is time for him to be "penalize[d]" for "past unlawful conduct" that the SEC alleges he committed. **ROA.595**. As the court further explained, placing Barton's entities into receivership is "consistent[] with Scripture's just admonition that each ought to be

penalized for his own wrongdoing." Order Granting Receiver's Mot. to Supplement [ECF No. 88] at 6 n.16. In our country, though, punishment happens *after* trials, the consideration of evidence, and findings by an impartial trier of fact. Our Constitution's Due Process Clause, after all, applies to "depriv[ations] of . . . property" too. U.S. CONST. amend. V.

Cases brought by the SEC are no exception. The SEC can ask a court, at the beginning of a case, to appoint a receiver over a defendant's property. But it is not enough only to allege that securities fraud occurred and then take someone's home and business pending an effort to prove it. Instead, the SEC must show that the prejudgment seizure of property is *necessary* to prevent an otherwise imminent flight of assets *purchased with investor funds*.

The SEC did not show, and the district court did not find, that here. Nor could it have. The SEC claimed that even just the first 29 entities placed into the receivership had more than $70 million in assets, nearly three times $26 million the SEC contends might be needed to compensate the lenders at issue in the case. And those assets were largely real estate that cannot flee to anywhere.

Instead, the SEC said, and the district court agreed, that its *allegations* of fraud were enough to seize all of a defendant's property at the beginning of a case. In doing so, the district court applied the wrong legal standard. And then the district court gave the Receiver extraordinary powers, not just to secure the defendant's property for safe keeping pending a future judgment, but to sell and destroy that property.

This is the quintessential case where a stay is required to prevent irreparable harm. The appointment of any receiver, without the findings long required by this Court, is a gross violation of Barton's constitutionally protected property rights. But the district court has created a *super-receiver*, authorizing him to is selling real property, for good, before any judgment of wrongdoing. That is irreparable harm *per se*.

These errors are aggravated by the district court's decision to choose as receiver a lawyer entirely inexperienced in managing a commercial real estate business. In doing so, the district court overrode the SEC's recommendation for running these business, David Wallace, an old hand in Dallas commercial real estate. The result has been catastrophic. The Receiver is now seeking to sell pending real estate

development rights for pennies on the dollar, either unable to see their value or to undertake the straightforward development work required to maintain that value. If the Receiver were allowed to continue as currently structured, the court's orders would imperil the ability of these businesses to pay back the lenders at issue in this case.

A stay pending appeal is necessary to prevent or at least stave off some of these ills. The Appellant respectfully requests that the Court stay the receivership order pending appeal and return these businesses to the management of their previous owners. At a minimum, however, the Court should order a standstill to the Receiver's most permanent and irreversible actions. Those include the ability to sell real estate development interests without the Appellant's consent, to review privileged information in a manner that taints the criminal and civil prosecutions, and to destroy documents in his discretion, including those vital to the preparation of a defense. As a condition of not staying the receivership in its entirety, this Court should instruct the district court to replace the receivership with a monitor experienced in real estate development that must approve sales or borrowing, but otherwise leaves

an experienced team in place to continue progressing pending real estate development projects to their maximum value.

## II. Factual and Procedural Background

Timothy Barton, up until the district court's Receivership Order, was Chief Executive Officer of JMJ Development LLC. JMJ Development is not some kind of broker dealer or trading house under the SEC's close supervision. It is a real estate development business that supervises the buying of land in the Dallas/Fort Worth area and its transformation into apartments, houses, and hotels. He started and ran that company for 30 years.

This case concerns the handling of several unsecured loans from Chinese nationals in connection with real estate development projects. Many of these lenders, to this day, have been impossible to contact, their identities having been concealed by their "appointed representative." That "representative," Michael Fu, also has been sued by the Commission.

The Commission alleged that entities associated with Mr. Barton put funds obtained from those loans to work in real estate projects other than those to which lending contracts restricted the funds. **ROA.15–16**.

After investigating for two years, the SEC filed this case on September 23, 2022, alleging that the loans and their handling implicated and violated the securities laws. **ROA.14**; **ROA.586**. All told, the SEC alleges $26 million was loaned to corporate real estate development entities. **ROA.15**.

On the same day the SEC filed its complaint, Barton was arrested after the Department of Justice filed parallel criminal charges concerning the same alleged conduct. *See United States v. Barton*, No. 3:22-cr-00352-K (N.D. Tex. Sep. 20, 2022).

Three days later, the SEC moved to impose a receiver over 29 companies. **ROA.108, 114–16**.

On October 18, 2022, the district court granted the SEC's motion. **ROA.594**. The court provided no opinion or independent explanation for the order, and largely rubberstamped the SEC's proposed order. *Compare* **ROA.594–95** *with* **ROA.135–36**. The only material change was that the district court rejected the SEC's request for a receiver with "extensive experience . . . involving real estate issues," **ROA.132**, instead opting for a trial attorney. **ROA.596**. The district court made the change without notice to any party.

The Receiver immediately kicked Barton out from his business of 30 years, terminated all employees of the entities placed in receivership, **ROA.1198**, and removed Barton from his personal residence. **ROA.1206**. Barton sought emergency relief to stay in his home, but the district court denied the request *twenty-five minutes later*, with no reasoning. **ROA.621**; **ROA.9** (showing electronic denial). The Receiver obtained the district court's approval to sell Barton's personal residence and a key business asset. ECF Nos. 104, 109.

Within two weeks, the Receiver sought to add 131 additional corporate entities to the receivership without providing any evidence that these entities received any funds or took any actions related to the SEC's claims. **ROA.693**. Over Barton's objection, the court granted the motion without rendering an opinion or findings. **ROA.1172**.

Three days later, the Receiver moved for additional authority to liquidate, abandon, and destroy property belonging to Barton, the receivership entities, and other third parties. **ROA.759**. The Receiver's motion also requested permission to shred documents at Barton's office and home that the Receiver had seized. **ROA.771–72**. The court granted this motion without analysis. **ROA.1178**.

Three days after that, Barton proposed sales that would raise substantial cash for the receivership entities. Barton arranged for a third party letter of intent to purchase three apartment complexes for $107 million, which could raise for placement into escrow nearly the $26 million at issue in this case and dispense with the need for the Receiver managing a wide ranging real estate development business. **ROA.1109–12**; Letter of Intent, App. to Mot. to Stay Pending Appeal [ECF No. 72] at 4. Barton also provided the Receiver with a ready to execute sale of a real estate asset for $9 million that would raise $3 million in net proceeds for continuing operations. Mot. for Appointment of Appraisers [ECF No. 110].

On November 17, 2022, Barton filed a notice of appeal of the district court's receivership orders. **ROA.1190**. On November 28, 2022, Barton filed a motion for stay pending appeal with the district court. ECF No. 71. The court has yet to act upon that motion despite, in the meantime, authorizing the irreversible sale of key property. *See* ECF Nos. 104, 109.

## III. <u>Legal Standard</u>

When deciding whether to grant a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that

he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each factor favors a stay here.

## IV. Argument

### A. The District Court Likely Erred in Turning Over All of Defendant's Property To A Receiver

This Court has jurisdiction to review orders appointing receivers and removing persons from and authorizing the sale of property. 28 U.S.C. § 1292(a)(1) (jurisdiction over orders granting injunctive relief) and § 1292(a)(2) (jurisdiction over orders appointing receivers); *Citibank, N.A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) ("An order confirming a judicial sale of property" is appealable). The district court's orders appointing the Receiver over certain corporations, **ROA.594; ROA.1172**, and granting him extraordinary powers, including to sell and destroy property, **ROA.1178**, are all appealable.

### 1. The district court applied the wrong legal standard when it appointed the Receiver

The district court applied the wrong legal standard and thereby absolved the SEC of crucial showings designed to ensure due process, before adopting the "drastic" measure of a receivership. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). The SEC claimed that it was entitled to a receivership based on a "*prima facie* showing of fraud." **ROA.125**. But the case law on which the SEC and then district court relied concerns the light showing required after the SEC has obtained a preliminary injunction. *See* **ROA.124–25** (citing *SEC v. First Fin. Grp. of Tex.* 645 F.2d 429, 438 (5th Cir. 1981) (explaining the test for appointing a receiver "ancillary" to already-obtained SEC injunctive relief). The SEC, however, neither sought nor obtained injunctive relief prior to the appointment of a receiver in this case.

Accordingly, the district court did not address the governing Fifth Circuit legal standard for when the injunctive relief has not been obtained, which allows for a prejudgment receivership "*only* where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere*,

703 F.3d at 305 (emphasis added). The SEC never tried to establish, and the district court did not hold, that the receivership was necessary to prevent asset flight and that no less burdensome alternative was available.

This was clear error. The requirement of showing clear necessity and the unavailability of less burdensome measures is what keeps the Government from seizing a defendant's property simply by alleging wrongdoing. This Court's *Netsphere* standard protects property and due process rights at the heart of our Constitution.

The district court's error was not harmless; the *Netsphere* standard could not have been satisfied if it were applied.

*First*, there is no "clear necessity" for a receivership, as the SEC never showed an imminent risk of asset flight. *Netsphere*, 703 F.3d at 305 (citing *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241–42 (5th Cir. 1997), which considered whether there was "imminent danger that property will be concealed, lost, or diminished in value"). Nor could it have, as the assets at issue primarily consist of real property that cannot be easily moved. **ROA.174**. *Compare First Fin. Grp.*, 645 F.2d at 439 (ordering a receiver because the cash assets at issue could "be easily

disposed, concealed, or dissipated") *with Kimmis v. Atchley*, No. 3:10-CV-1535-D, 2014 WL 6805478, at *2 (N.D. Tex. Dec. 3, 2014) (denying receivership after finding no "imminent danger that property will be concealed, lost, or diminished in value").

After starting its investigation and then waiting two years to pursue such relief, the SEC cannot credibly claim that assets are about to be secreted to the ends of the Earth. **ROA.586.** Indeed, the SEC's receivership motion is focused on conduct occurring before 2019. "[U]nnecessary delay . . . may be viewed as inconsistent with a claim that . . . there is an urgent need for immediate relief." 11A Wright & Miller, Fed. Prac. & Proc. § 2946 (3d ed. 2022).

There was also no necessity for a receivership over these real property assets because their market value well exceeded the alleged $26 million in lender funds that are at issue in this lawsuit. The SEC itself assesses that value at more than $70 million. **ROA.174**. This was not some situation where, absent the "drastic measure" of a receiver, there would be no resources to satisfy a compensatory remedy if the SEC could later prove wrongdoing.

*Second*, the burdens imposed by the particular features of this receivership are extraordinary. The district court, without any explanation, appointed a receiver *with no experience in running a real estate development business*. In doing so, the district court bypassed the SEC's recommended receiver—Mr. David Wallace, a well-respected real estate development professional—for a trial lawyer in his 30s that the district court trusted from other experiences. This move was contrary to common sense recognized by Congress in the federal debt collection context, where it requires "[a] receiver appointed to manage residential or commercial property [to] have demonstrable expertise in the management of these types of property". *See* 28 U.S.C. § 3103(b)(1)(B). And the consequences have been catastrophic. Rather than running the business and pressing projects to maturity, the Receiver is selling assets for pennies on the dollar.

This is most plain in the district court's recent order to sell the Barton entities' interest in the Marine Creek and Orchard developments, which has also been appealed. ECF No. 112. These are developments expected to be worth $350 million at the end of the project. The Barton entities had participation interests in these projects of, among other

things, 25 percent of the profits, worth more than $25 million. ECF No. 107 at App. 25-27. The district court approved the Receiver's request, though to sell this asset for $750,000, less than 5 percent of its conservatively estimated value. ECF No. 109. A Receiver experienced in real estate could have done the development work necessary to avoid any dispute over entitlement to these payments. And $25 million in value, funds that could have alone addressed any alleged compensation needs in this case, is at risk of vanishing.

What is certain is that receivers are costly, as there are tremendous start-up costs for a receiver to familiarize himself with the business he is taking over. In the case of a receiver who is a law firm partner, all of that time is being charged, by the hour, to the underlying business, dissipating assets that would otherwise be available to pay back lenders and others. *See, e.g., SEC v. ABS Manager, LLC*, No. 13CV319-GPC JMA, 2013 WL 1164413, at *8 (S.D. Cal. Mar. 20, 2013).

*Third*, the district court did not consider any "less drastic equitable remedies" than a receivership. *Netsphere*, 703 F.3d at 305. If there were a concern that funds would not be fully secured absent some kind of judicial intervention, a court-appointed monitor who must approve all

sales and borrowing would address this issue. At the same time, such a monitor remedy would leave in place experienced real estate development management that could push pending projects forward. The Defendant proposed such a monitor in the alternative to the SEC's requested receivership, *see* **ROA.575–76**, but the district court entirely ignored this proposal and other alternative remedies.

2. **The district court imposed the receivership to punish a criminal defendant before the Government has proved any wrongdoing**

The district court took nearly all of Barton's property to "penaliz[e] past unlawful conduct and deter[] future wrongdoing." **ROA.595**. For the district court, the need to penalize is of Old Testament proportions. To explain why even more corporate entities were being added to the receivership, the district court quoted the Book of Ezekiel:

> "The righteousness of the righteous shall be upon himself, and the wickedness of the wicked shall be upon himself." Ezekiel 18:20. So in holding [receivership entities] accountable for the actions of their true controller—Timothy Barton—the Court acts consistently with Scripture's just admonition that each ought to be penalized for his own wrongdoing.

ECF No. 88 at 6 n.16.

The problem is that the Constitution prohibits punishment prior to a trial, in which the Government bears the burden of proof. The district

court took nearly all of Barton's property to punish him now without requiring the Government to prove its claims. This focus on prejudgment punishment might explain the district court's lack of analysis as to why a receivership is necessary. Regardless, the district court receivership order, being designed to punish, is error. *See, e.g., SEC v. Phillip A. Michael Sec., Inc.*, No. 74 CIV. 2158, 1974 WL 416, at *2 (S.D.N.Y. June 26, 1974) ("[T]he extraordinary remedies of injunctive relief and receivership should not be invoked when the only effect would be punitive, not remedial.").

Moreover, the clear intersection between this receivership and a pending criminal case is inequitable and deepens the error of the district court's orders. After running an investigation for two years, the SEC sought a receivership only after the SEC and the Department of Justice decided to launch a parallel civil and criminal proceedings against Barton. There are significant questions regarding whether this receivership has any purpose other than to starve Barton of resources to defend against and to provide an additional leverage in the government's criminal prosecution.

Indeed, the receivership order serves as a workaround of procedural protections for a criminal defendant. The Receiver has taken possession of Barton's office and home and all the privileged materials therein. There are no safeguards in place to stop the Receiver from incorporating these privileged materials into his review and his reports to the Government. *See* **ROA.616** (requiring the Receiver to "provide the SEC with any documentation that the SEC deems necessary"). Nor does Barton have access to these materials for the purpose of preparing his defense.

**3. The district court has erred in authorizing the sale of key property prior to any judgment of wrongdoing**

The Receiver's first order of business was to seize Barton's only home, simply because Barton used a special purpose company whose sole purpose was to hold title to the house. The Receiver quickly kicked Barton out of his home, and Barton now sleeps on his daughter's couch. On December 20, 2022, the district court entered an order for the home to be sold.

Two days later, the district court authorized the sale of an interest in a $350 million development of apartments and homes at Marine Creek in Fort Worth. ECF No. 109. Under the agreements with a co-developer,

Barton's entities had rights to compensation for development work and construction management and a profit participation interest projected to yield more than $25 million over five years. ECF No. 107 at App. 25-27. The district court authorized the Receiver to sell those real estate rights for $750,000 in cash. ECF No. 95 at 5.

These sales run headlong into prohibitions against a prejudgment receiver selling assets. The only legitimate purpose for a prejudgment receivership is to secure assets otherwise at risk of imminent flight for (i) their use to compensate alleged victims in the event of a later judgment of wrongdoing or (ii) for return to the defendant's control in the event the government does not ultimately prove its case. *First Fin. Grp.*, 645 F.2d at 439. For this reason, prejudgment receivers generally should not be permitted to sell assets without the consent of the defendant, as it alters the status quo and makes the return of assets impossible. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations" as to receivership liquidations); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (criticizing "the use of receivers to effect the [liquidation] of a defendant firm"); *SEC v. Current Fin. Servs.,*

*Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) (liquidating not "appropriate prior to the entry of final judgment").

The district court nonetheless authorized these irreversible (in the absence of a stay from this Court) property sales in just the receivership's second month. The court's decision is clear error and a stay pending appeal is necessary to keep this liquidation process from continuing.

**4. The district court erred by placing companies under receivership with no shown relationship to lender funds at issue in the SEC's claims**

The district court further erred by placing 164 different corporate entities into receivership without finding that they received ill-gotten gains. "[E]quity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere*, 703 F.3d at 306. To impose a receivership over an entity that has not been accused of wrongdoing, the movant must show that the entity "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). That showing typically involves some form of fund-tracing analysis. *See, e.g., Netsphere*, 703 F.3d at 310 (holding that a receivership could not be imposed over "personal property and assets" not traceable to the underlying dispute);

*SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018) (requiring the movant to show that the non-party entity is both controlled by the defendant and in possession of funds traceable to fraud).

In its motion seeking a receivership, the SEC chose 29 corporate entities to be placed into receivership and produced an SEC employee's report to suggest these 29 entities received some lender funds. **ROA.172** (citing **ROA.175**). Notwithstanding several defects within the report that Appellant will address in his merits brief, no party made any similar showing for the other 135 entities that the Receiver asked to be and district court ultimately ordered into receivership.

This error directly led to the district court blessing the removal of the Defendant from his only home. There was no evidence in the record that the special purpose corporation holding Barton's residence had received any lender funds. To the contrary, that company had no line of business, and its only purpose was to hold title a personal home (a title that the defendant held in his personal capacity just months earlier). By disregarding this Court's precedent, the district court has allowed a receiver to remove a defendant from his home, all before the Government

has proven that he engaged in wrongdoing. These actions cannot be squared with any conception of constitutional property and due process rights.

### B. The Appellant will suffer irreparable harm in the absence of a stay pending appeal

Barton will suffer irreparable harm in the absence of an immediate stay of the district court's orders appointing the receiver and authorizing the sale of property.

First, in the absence of a stay, real and business property will be irreversibly liquidated and squandered. The improper liquidation of real property assets is per se irreparable harm. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that losing an interest in real property, even a leasehold, constitutes irreparable harm).

The district court's orders are upending the defendant's business interests. The defendant's real estate development business is a 30-year-old institution that has survived years of dramatic business cycles. But the district court's decision to install a receiver *with no experience in real estate development matters* is an existential threat to that business and, more importantly, tens of millions of dollars in project values that would

have been available to repay the unsecured lenders that are subject to the SEC's claims. These business assets are being sold for pennies on the dollar because the Receiver has no ability to run them.

The harm to the Appellant cannot be cured by a damages award, as the Receivership Order immunizes the Receiver from any monetary liability, **ROA.614**, and the government "generally enjoy[s] sovereign immunity for any monetary damages." *Wages & White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Second, the Liquidation Order grants the Receiver power to abandon, sell, and destroy all personal property in his possession, including personal property and company records and files. **ROA.1179–82; ROA.1184–86**. The order contains no protections for documents material to Barton's defense, which poses a substantial risk of spoliation and taint. **ROA.1184–86**.

Third, the Receiver has full access to attorney-client privileged documents by virtue of their location in Barton's home or office. Neither the Receivership Order nor its subsequent orders set forth protocols governing how the Receiver must handle privileged materials. And the violation of a person's attorney-client privilege amounts to irreparable

harm. *See In re Search Warrant Issued June 13*, 2019, 942 F.3d 159, 175 (4th Cir. 2019) ("[A]n adverse party's review of privileged materials seriously injures the privilege holder.").

Fourth, the receivership strips Barton of funds he needs to defend himself. If that deprivation continues, "the wound could be deep: wrongful imprisonment." *United States v. Michelle's Lounge*, 126 F.3d 1006, 1008 (7th Cir. 1997). Because Barton will suffer irreparable harm without a stay, the district court's orders should be stayed pending appeal.

### C. The other parties face minimal, if any, injury from a stay, and the public interest favors a stay

"[H]arm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. But that does not mean that the SEC's interest is synonymous with the public interest. Indeed, the SEC must show that it would suffer "substantial injury" under a stay. *See E.T. v. Paxton*, 19 F.4th 760, 763 (5th Cir. 2021).

A SEC effort to make that showing would be hard to square with it having waited two years to seek a receivership. *Compare* **ROA.586** *with* **ROA.108**. Failure to timely "request[] emergency relief" militates in

favor of a stay of that relief pending appeal. *E.T.*, 19 F.4th at 770. Further, if the Receiver continues to pursue liquidation and to drop the ball on pending real estate projects, Barton could strive only for a Pyrrhic victory on appeal, tens of millions in value already having been flushed by an insufficiently justified and supervised receivership.

This Court should reject any SEC claim that the stay will somehow impede its enforcement of the securities laws, especially when it declined to make a showing that the receivership was necessary in the district court. Such a claim would be impossible to square with the lack of evidence of imminent asset flight and with the SEC's assessment that the receivership entities have nearly three times more in market value than the $26 million at issue in this case. **ROA.174**.

Any SEC claims of injury from a stay must address the alternative measure of a court order requiring approval of an experienced real estate professional monitor before sales or loans. That would permit crucial real estate development work to continue, under a team experienced in the projects, with full transparency and court control over important financial decisions. **ROA.575–76**. In the alternative, the Appellant has requested a stay of the most damaging and irreversible steps of the

Receiver, pending the appointment of such a monitor. Under that arrangement, there is little risk that the SEC would be harmed.

In any event, the SEC remains capable of pursuing its law enforcement mission the regular way: By proving its case and obtaining a money judgment, if it can, then enforcing that judgment. None of that requires a receivership. And a stay would promote the public's interest in requiring the government to comply with the law. *Cf. League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "It is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. US Marshals Svc.*, 977 F.3d 817, 838 (9th Cir. 2020).

## V. Conclusion

Barton respectfully requests that this Court stay the Receivership Order, Supplemental Order, and Liquidation Order pending appeal. In the event that the Court does not stay the entirety of these orders, Barton asks, in the alternative, for a stay to the extent these orders authorize the Receiver to (1) sell real estate development interests without Barton's consent; (2) review privileged information in a manner that taints the criminal and civil prosecutions; (3) destroy documents in his discretion, including those vital to the preparation of a defense. In addition, the

Court should order a standstill in all Receiver activities pending the district court replacing the Receiver with a monitor experienced in real estate development who must approve sales or borrowing, but otherwise leaving an experienced team to continue key projects.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*
Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Edwin A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

December 28, 2022

## Certificate of Filing and Service

I hereby certify that on December 28, 2022, this motion was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

/s/ *Michael J. Edney*

## Certificate of Conference

I hereby certify that this motion seeks identical relief to that sought in a motion in the district court for a stay of the district court's orders pending appeal. *See* Fed. R. App. P. 8(a)(1)(A). Plaintiff-Appellee the Securities and Exchange Commission formally opposed that relief below.

*/s/ Michael J. Edney*

## Certificate of Compliance

I hereby certify that this document complies with the word limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 5,199 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*